[No. 18916-0-II.   Division Two.   May 3, 1996.]

FRANK BALMER, ET AL., *Respondents*, v. DENNIS NORTON, ET AL., *Appellants*.

---

*James A. Krueger, Harold T. Hartinger,* and *Vandeberg, Johnson & Gandara,* for appellants.

*Margaret Y. Archer, Warren J. Daheim,* and *Gordon, Thomas, Honeywell, Malanca, Peterson & Daheim,* for respondents.

BRIDGEWATER, J. — Dennis and Mary Norton (Nortons) appeal a superior court order reforming a security agreement stipulated to by the Nortons and Frank and Janice Balmer (Balmers), recommended by a court–appointed receiver, and previously approved and court–ordered as part of the distribution of assets in a corporate dissolution action. We hold that, following a final judgment, reformation of a court–approved security agreement may be based only on legal grounds justifying contract reformation, not on equitable grounds. Without fraud, mutual mistake, lack of consent, or misrepresentation, the superior court

had no basis under CR 60 to modify the priority of security interests stipulated to by the parties and memorialized in the court's earlier final judgment. We reverse.

The Balmers and the Nortons were equal shareholders in a corporation, Balton, Inc., that owned six Little Caesar's Pizza stores. Disputes arose; the Nortons entered into a lease for a prospective new pizza store, the Green Firs store, under a new and separate corporation. The Balmers sued for judicial dissolution of Balton, Inc.

Judgment was entered on July 2, 1993. The judgment ordered the Nortons to transfer the assets of their separate corporation, including any interest in the Green Firs store, to Balton, Inc.; that Balton, Inc., be dissolved; and that Dennis Norton not interfere in any application Frank Balmer made for approval as a Little Caesar's franchisee. The judgment also appointed a receiver to wind up and liquidate the business.

The parties then agreed how to divide the stores and drafted reciprocal indemnity agreements to hold each other harmless from existing and potential liabilities. Liabilities included the principal balances of Michigan National Bank loans, lease obligations, and general liabilities arising out of the operation of Balton, Inc. The indemnity agreements were backed by security agreements for which the stores constituted the collateral. The security agreements provided that their respective security interests were subordinated to the *existing* liens of Michigan National Bank, the franchise creditor of the several stores, and that no property could be further encumbered without the secured parties' prior written consent. Dennis Norton also established a price of $12,500 for the Green Firs lease; Frank Balmer exercised a court option to assume the lease, knowing there was neither an agreement nor financing in place for a Little Caesar's franchise. The receiver recommended that the superior court adopt the parties' stipulated agreements. Thereafter, the superior court entered orders on September 29, 1993, and

November 12, 1993, memorializing the stipulated agreements of the parties and the recommendation of the receiver.

Sometime in February, 1994, the Nortons received notice from the lessor of the Green Firs store that they were in default on the Green Firs lease because the Balmers, now operating as B & J Pizza, Inc., were not paying the obliged rent. Separately, and without mention of the purported default, the receiver submitted his final report on April 1, 1994. The superior court ordered the receiver discharged on April 8, 1994. Other supplemental judgments were entered on April 20 and May 13, 1994, concerning the final distribution of assets.

While the Nortons were being warned of a possible default on the Green Firs lease, the Balmers sought to obtain franchise financing for the Green Firs store and refinancing for the other three B & J Pizza stores from Michigan National Bank. Michigan National Bank denied the Balmers' request to obtain financing because the bank's security interest would be subordinated to the security interests created by the judgment.

The Balmers filed a CR 60(b) motion on November 15, 1994, seeking to "clarify" or "modify" the judgment by reforming the security agreement so that the Nortons' security interest would be subordinated to future security interests obtained by Michigan National Bank in B & J Pizza. The superior court granted the motion. The Nortons appeal, contending the superior court lacked the authority and the grounds to modify the original security agreement.

■ The Balmers contend the superior court's reformation of the security agreement was entirely proper, for "[e]quity requires that to be done which ought to have been done." *Paullus v. Fowler*, 59 Wn.2d 204, 214, 367 P.2d 130 (1961). To that end, the Balmers argue that receivership is an equitable proceeding, that the judgment was not final, and that the result of the agreement was unfair and inconsistent with the intent of the parties.

Under these circumstances, they argue, reformation was proper within a reasonable time of judgment under CR 60.[1] We disagree.

The Balmers' argument that the superior court maintained continuing equitable jurisdiction has no merit; a final decree had been entered and the receiver discharged. The cases cited by the Balmers are inapposite.

The remaining is a matter of first impression. We analyze the issue under recognized principles of contract law because:

1. The superior court approved by final judgment the parties' security agreements, i.e., contracts;

2. The superior court and the parties contemplated that the security agreements would be legally enforced in the event of one party's default; conversely, parties to a contract do not anticipate judicial supervision or equitable piecemeal reformation or modification;

3. The modification of the judgment materially reforms the security agreement in that $100,000 of new debt now takes priority over the Nortons' bargained–for security interests;

4. The superior court concluded there was no legal basis for reformation of the security agreement; and

5. The Balmers fail to cite to any other authority that might justify the superior court's actions.

Applying contract principles, we hold as follows:

■ A. Contracts approved by a final judgment do not lose their character as contracts and are enforced as

---

[1]CR 60(b) provides in relevant part:

On motion and upon such terms as are just, the court may relieve a party or his legal representative from a final judgment, order, or proceeding for the following reason[]:

. . . .

(11) Any other reason justifying relief from the operation of the judgment.

The [CR 60(b)] motion shall be made within a reasonable time . . . .

contracts. *Nationwide Mutual Fire Ins. Co. v. Watson,* 120 Wn.2d 178, 187, 840 P.2d 851 (1992) (when negotiated release of insurance claim results in court–ordered dismissal of action, appellate court reviews enforceability of release under principles of contract law).

B. Final judgments entered by stipulation of consent are contractual in nature and are not subject to modification unless the stipulated agreement was obtained by want of consent, fraud, collusion, mutual mistake, etc. *Haller v. Wallis,* 89 Wn.2d 539, 544, 573 P.2d 1302 (1978) (citing 3 Edward Tuttle, *A Treatise of the Law of Judgments* § 1352, at 2776–77 (5th ed. rev. 1925)). *See also Hadley v. Cowan,* 60 Wn. App. 433, 804 P.2d 1271 (1991).

C. The former judgment is not ambiguous. The security agreement underlying the distribution of the Green Firs store creates a security interest subordinate only to *existing* Michigan National Bank liens. The Balmers offer no basis for interpreting the judgment in any way other than consistent with its express terms.

The security agreement was a contract freely bargained for; once final judgment was entered the superior court's authority to reform the agreement was limited to legally cognizable grounds such as fraud, mutual mistake, lack of consent, or misrepresentation. Here, none of these grounds are presented. In conclusion, the Balmers' position that equity provides a tenable basis for modification of a judgment approving a stipulated security agreement is insupportable.

We reverse.

TURNER and ARMSTRONG, JJ., concur.