[No. 23227-8-II. Division Two. April 2, 1999.]

PEDRO MARTINEZ, ET AL., *Plaintiff*, v. KITSAP PUBLIC SERVICES, INC., *Appellant*, MILLER INDUSTRIES, INC., *Respondent*.[†]

---

[6]RCW 10.99.010.

[†]This opinion was reported in the advance sheets of the Washington Appellate Reports as *Martinez v. Miller Indus., Inc.*

936

*Maureen M. Falecki, Robert W. Novasky,* and *Carrie Selby,* of *Burgess Fitzer Leighton & Phillips, P.S.,* for appellant.

*Daniel P. Mallove,* of *Cozen & O'Connor, P.C.,* for respondent.

HUNT, J. — Kitsap Public Services, Inc., dba Chico Towing Company, appeals the striking of its Note for Trial Setting for its cross claim against codefendant Miller Industries, Inc., following their joint settlement with plaintiffs Pedro Martinez and Pamela Lea. Holding that, in agreeing to settle with plaintiffs, Chico did not agree to relinquish its cross claim against Miller, we reverse and remand for further proceedings.

## FACTS
### I. THE ACCIDENT

On August 17, 1995, a tow truck owned and operated by Kitsap Public Services, Inc., dba Chico Towing Company (Chico), was called to SR 3 near Silverdale, where a logging truck was stuck in the median. When the operator started the tow truck's winch, a piece of one lug tore loose and smashed through the windshield of a vehicle operated by Pedro Martinez, who happened to be driving by. Martinez was severely injured. He and his domestic partner, Pamela Lea, brought suit against Chico and Miller Industries, Inc. (Miller), the manufacturer of the tow truck.[1] Chico and Miller cross claimed against each other. Trial was set for September 22, 1997.

### II. SETTLEMENT

In February 1997, Chico and Miller began settlement negotiations. What occurred during those negotiations is disputed. According to Chico, Chico and Miller agreed to

---

[1]Martinez and Lea are not involved in this appeal.

try to settle with Martinez and Lea, who all parties agreed were not at fault. Chico and Miller would either settle with Martinez and Lea before trial or litigate against Martinez and Lea; either way, Chico and Miller would wait to resolve liability between themselves until after the plaintiffs' case was settled or tried.

Chico is adamant that it agreed to contribute funds toward settlement of Martinez's and Lea's claims only on condition that Chico and Miller would sort out their mutual dispute after Martinez's and Lea's claims were resolved. Miller contends that, when it began negotiating with Chico in August 1997, the two parties agreed that if they could successfully negotiate a settlement with plaintiffs before trial, "each party would accept its share of the total settlement monies as representative of its proportionate liability"; but if the case could not be settled before trial, Chico and Miller would resolve their cross claims in "some type of post-trial proceeding to be agreed upon at a later date."

Chico and Miller settled with Martinez and Lea on September 15, 1997, one week before trial was to begin; Chico contributed $70,000 and Miller contributed $80,000. No formal order was entered at that time, but the trial date was either stricken or permitted to pass. Chico and Miller spoke on the telephone many times in the days following the settlement. On October 3, 1997, Chico sent a letter to Miller indicating that Chico was ready to discuss the apportionment of liability between Chico and Miller. On October 20, 1997, Chico again wrote to Miller, indicating that it wished "to proceed as originally intended on the liability issues[,]" suggesting mediation or binding arbitration as expedient alternatives to a superior court trial.

On October 21, 1997, after receiving from Miller a proposed Stipulation and Order of Dismissal, Chico again wrote to Miller, declining to sign the stipulation "at this point because of the unresolved liability issues." The rejected stipulation would have dismissed with prejudice "all claims which now exist or which may exist in the

future *among and between the plaintiffs and defendants* arising out of the incident of August 17, 1995" (emphasis added). On November 2, 1997, Chico again wrote to Miller, emphasizing that it would not agree to a dismissal unless it left open an avenue for Chico to pursue its claim against Miller. Over the next several months, Chico and Miller continued to debate their joint liability. The case was not dismissed because Chico refused to sign the stipulation as drafted.

Hoping to resolve the case, at least as to Martinez and Lea, plaintiffs' counsel drafted another stipulation, from which the word "among" was excised. In this stipulation the parties agreed to dismiss with prejudice "all claims which now exist or which may exist in the future *between the plaintiffs and defendants* arising out of the incident of August 17,.1995." Miller did not object to this wording. At the February 6, 1998, conference held to discuss the proposed order, Chico noted:

> We also have no objection to Mr. Spearman's order. As far as the claim between the two defendants, that is still in dispute as far as I know, but that has nothing to do with this order. We don't have any objection.

The court approved the stipulation drafted by plaintiffs' counsel and orally indicated that it would "enter the Order of Dismissal of this date, and dismiss this action in accordance with the terms of that [O]rder." The court clerk's record of the conference indicates that Chico had "no objection to order regarding plaintiff, believe[s] there is claim between defendants." In accordance with its previously announced intention, Chico filed a Note for Trial Setting and Statement of Arbitrability in late February 1998.

On March 5, 1998, Miller filed an Objection to Chico's Note for Trial Setting, inaccurately asserting that the court had ruled it would "sign an Order of Dismissal dismissing all claims between the parties." The court actually had ruled that it would "dismiss this action in accordance with

the terms of that order,"[2] which order dismissed only those claims "between the plaintiffs and defendants[.]" Miller claimed that it first heard about Chico's seeking apportionment of liability *after* the settlement had been reached. Chico responded that it had never agreed to drop its cross claim against Miller.[3] The trial court did not set or call the case for trial. Instead, following a hearing on March 13, 1998, the trial court ruled that no claims had survived the February 1998 Order of Dismissal.

## III. APPEAL

Chico appeals, arguing that the trial court erred in striking its Note for Trial Setting. Chico argues that the parties clearly intended the February 1998 Order of Dismissal to dismiss only those claims by plaintiffs (Martinez and Lea) against defendants (Chico and Miller) and did not address at all, let alone dismiss, the cross claims between codefendants Chico and Miller. Chico cites in support of this argument the language of the order itself, in combination with permissible extrinsic evidence, especially the excising of the word "among" from the original proposed order. Chico asks us to remand for trial on apportionment of liability between Chico and Miller. Alternatively, Chico argues, the record shows that the term "between" as used in the agreed Order is ambiguous; Chico asks that if we reject its first argument, we remand for a jury trial on the issue of whether the parties intended the February 1998 order to dismiss the cross claims between Chico and Miller.

Miller responds that the February 1998 Order unarguably establishes that the cross claims between Chico and

[2]That order, the written order of February 1998, was entitled "Notice of Settlement and Order of Dismissal."

[3]In support, Chico cited: correspondence leading up to the February 6, 1998, conference; statements at that conference that it would pursue its cross claim against Miller even though plaintiffs Martinez and Lea were being dismissed from the lawsuit; and the contrast between the language of the original stipulation, which it had rejected, and the language of the revised stipulation, which it had signed.

Miller were dismissed. Miller asks us to affirm the trial court's April 1998 order striking Chico's Note for Trial. We find Chico's first argument persuasive.

## ANALYSIS
### I. CONTRACT INTERPRETATION
#### A. INTENT OF THE PARTIES

 Final judgments entered by stipulation or consent are contractual in nature. *Balmer v. Norton*, 82 Wn. App. 116, 121, 915 P.2d 544 (1996). "The touchstone of contract interpretation is the parties' intent." *Tanner Electric Coop. v. Puget Sound Power & Light*, 128 Wn.2d 656, 674, 911 P.2d 1301 (1996). Here, the parties' stipulation and resultant court order provided no basis for the trial court's determination that Chico's cross claim against Miller had been dismissed. When a court order incorporates an agreement between parties, the "meaning of the order is the same as the meaning objectively manifested by the parties at the time they formed the agreement." *Interstate Prod. Credit Ass'n v. MacHugh*, 90 Wn. App. 650, 654, 953 P.2d 812 (1998); *see also In re Marriage of Boisen*, 87 Wn. App. 912, 920, 943 P.2d 682 (1997).

> "[P]arol evidence is admissible to show the situation of the parties and the circumstances under which a written instrument was executed, for the purpose of ascertaining the intention of the parties and properly construing the writing. Such evidence, however, is admitted, not for the purpose of importing into a writing an intention not expressed therein, but with the view of elucidating the meaning of the words employed. . . . It is the duty of the court to declare the meaning of what is written, and not what was intended to be written. If the evidence goes no further than to show the situation of the parties and the circumstances under which the instrument was executed, then it is admissible."

*Berg v. Hudesman*, 115 Wn.2d 657, 669, 801 P.2d 222 (1990) (quoting *J.W. Seavey Hop Corp. v. Pollock*, 20 Wn.2d 337,

348-49, 147 P.2d 310 (1944)).[4] The intent of the parties in reducing an agreement to writing may be discovered from the actual language of the agreement, as well as from

> " 'the contract as a whole, the subject matter and objective of the contract, all the circumstances surrounding the making of the contract, the subsequent acts and conduct of the parties to the contract, and the reasonableness of respective interpretations advocated by the parties.' "

*Tanner*, 128 Wn.2d at 674 (citations omitted).

Determining a contractual term's meaning involves a question of fact and examination of objective manifestations of the parties' intent. *Denny's Restaurants, Inc. v. Security Union Title Ins. Co.*, 71 Wn. App. 194, 201, 859 P.2d 619 (1993).

> If only one reasonable meaning can be ascribed to the agreement when viewed in context, that meaning necessarily reflects the parties' intent; if two or more meanings are reasonable, a question of fact is presented.

*MacHugh*, 90 Wn. App. at 654. When a question of fact exists as to meaning, the trial court must identify and adopt the meaning that reflects the parties' intent; the appellate court reviews the trial court's decision for substantial evidence. *Boisen*, 87 Wn. App. at 921.

> Interpretation of a contract provision is a question of law only when (1) the interpretation does not depend on the use of extrinsic evidence, or (2) only one reasonable inference can be drawn from the extrinsic evidence.

*Tanner*, 128 Wn.2d at 674. Determining the legal consequences flowing from a contract term involves a question of law. *Denny's*, 71 Wn. App. at 201. We review de novo

---

[4]The *Berg* court specifically rejected "the theory that ambiguity in the meaning of contract language must exist before evidence of the surrounding circumstances is admissible." 115 Wn.2d at 669. Extrinsic evidence is admissible to "illuminate[ ] what was written, not what was intended to be written." *Nationwide Mut. Fire Ins. Co. v. Watson*, 120 Wn.2d 178, 189, 840 P.2d 851 (1992).

such questions of law. *Knipschield v. C-J Recreation, Inc.*, 74 Wn. App. 212, 215, 872 P.2d 1102 (1994).

### B. AMBIGUITY

Words in a contract should be given their ordinary meaning. *Corbray v. Stevenson*, 98 Wn.2d 410, 415, 656 P.2d 473 (1982). "A contract provision is ambiguous when its terms are uncertain or when its terms are capable of being understood as having more than one meaning." *Mayer v. Pierce County Med. Bureau*, 80 Wn. App. 416, 421, 909 P.2d 1323 (1995). But a contract provision is not ambiguous merely because the parties suggest opposite meanings. *Mayer*, 80 Wn. App. at 421. "[A]mbiguity will not be read into a contract where it can reasonably be avoided[.]" *McGary v. Westlake Investors*, 99 Wn.2d 280, 285, 661 P.2d 971 (1983).

██ ██ This case turns on the meaning of the word "between" in the phrase "all claims which now exist or may exist in the future between the plaintiffs and the defendants[.]" Chico argues that this phrase indicates clearly and unambiguously that the order dismissed only the claims of the plaintiffs, Martinez and Lea, against the defendants, Chico and Miller, and that the order did not address Chico's cross claim against Miller. Alternatively, Chico argues that the language of the order and the surrounding circumstances show ambiguity in the meaning of the phrase. Miller argues that the phrase unambiguously indicates that the order dismissed all claims by all parties. Contrary to Miller's assertion, dismissal of Chico's cross claim was *not* "specifically included in the Order of Dismissal with Prejudice entered by the [c]ourt."

### 1. No Ambiguity—Dictionary Definitions of "Between"

Each party refers to multiple dictionary definitions of "between" to support its interpretation of the order. Chico cites: (1) WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY to

define "between" as "an intermediate position in relation to other two objects"; and "through a space limited by two objects"; (2) BLACK'S LAW DICTIONARY to define "between" as "space which separates . . . . [s]trictly applicable only with reference to two things"; and (3) the AMERICAN HERITAGE DICTIONARY for the proposition that, "when exactly two choices are specified, 'between is the only choice.' "

In contrast, Chico cites: (1) BLACK'S to define "among" as "mingled with or in the same group or class"; and (2) RANDOM HOUSE WEBSTER'S UNABRIDGED DICTIONARY for the proposition that, while "between" may refer to more than two entities under certain circumstances, "among" applies only if expressing a relationship that involves more than two persons or things. From these definitions, Chico argues that its explicit *rejection* of "among" in the original stipulation and the resultant elimination of "among" from the approved revised stipulation demonstrate unambiguously that the remaining word "between" refers only to the plaintiffs' claims against the defendants (Chico and Miller) as an entity, while leaving other claims intact.

Miller cites WEBSTER'S NINTH NEW COLLEGIATE DICTIONARY for the proposition that "between" has been used in describing more than two objects since Old English. Similarly, Miller cites the OXFORD ENGLISH DICTIONARY in arguing that "between has been, from its earliest appearance, extended to more than two." Miller argues that commonly used English language dictionary definitions are favored over definitions found in legal dictionaries.

Given the common usage of "between" and given the evidence in the record, we find Chico's argument persuasive. Chico clearly refused to agree to dismiss all claims "*among and between* the plaintiffs and defendants," but it did agree to dismiss all claims "*between* the plaintiffs and defendants" (emphasis added). The parties' use of the more limited word "between" and elimination of the broader word "among" clearly indicate an intent to preserve claims other than settled plaintiffs' claims against defendants. Miller argues that, if Chico intended to dismiss only those

plaintiffs' claims against defendants, and not claims between defendants, the stipulation should have been drafted as dismissing "all claims of plaintiffs against defendants."[5] But if Chico had intended to dismiss its cross claim against Miller, it would not have refused to sign the originally proposed order of dismissal, which contained the additional word "among" to describe all claims involving all the parties to the lawsuit.

## 2. Impact of Extrinsic Evidence

When the court is asked to determine the " 'meaning of what is written, and not what was intended to be written[,]' " *Berg*, 115 Wn.2d at 669 (citation omitted), extrinsic evidence is admissible to determine the parties' intent. Here, every piece of extrinsic evidence illustrates that Chico neither intended nor agreed to dismiss its cross claim against Miller. First, as noted above, the record indicates that Chico refused to agree to dismissal of all claims *"among and between* the plaintiffs and defendants." Yet after the stipulation was redrafted, Chico agreed to dismissal of all claims *"between* the plaintiffs and defendants."[6] Given that retaining the word "among" would have eliminated Chico's cross claim against Miller, omission of "among" was critically important to Chico.

Second, Miller does not dispute that, during the months following the settlement and before entry of the February 1998 order, Chico consistently indicated that it was pursuing its cross claim against Miller despite settling with the plaintiffs (Martinez and Lea) and agreeing to dismiss them from the case. Even though the multiple phone calls alleged by Chico are not reflected in the record, the record does contain Chico's postsettlement correspondence received by Miller months before the conference at which

---

[5]That the order might have been drafted using clearer language does not change that the language is clear enough when viewed in context. Plaintiffs, not Chico, drafted the stipulation.

[6](Emphasis added.)

the court's February 1998 order was entered. Chico wrote to Miller on at least four occasions, each time indicating its intent to pursue its cross claim against Miller, notwithstanding that the plaintiffs' claims had been settled. Miller does not contend that Chico ever indicated a contrary intent after the date of settlement.[7]

Third, at the conference to discuss the terms of the February 1998 order, Chico clearly stated, "As far as the claim between the two defendants, that is still in dispute[,]" thereby indicating that it was going to pursue its cross claim against Miller, and that the language of the February 1998 order would permit it to pursue its cross claim while releasing Martinez and Lea from the lawsuit. Finally, after entry of the order, Chico filed a Note for Trial. This "subsequent act" by Chico, a party to the stipulated order, is admissible to show intent. *See Harris v. Ski Park Farms Inc.*, 120 Wn.2d 727, 746, 844 P.2d 1006 (1993).

In light of the evidence to the contrary, Miller's alleged belief that the February 1998 order dismissed all claims by all parties, even in the unlikely event that it is true, is not "reasonable." *See Tanner*, 128 Wn.2d at 674. The record shows unequivocally that the parties did not intend to dismiss all claims among all parties and certainly indicates a lack of agreement to dismiss Chico's cross claim at any point in the proceeding. Both the written order and the conference of February 1998 indicate that Chico fully intended to pursue its cross claim against Miller and made this intent known on the record. Thus we hold that the trial court erred in striking Chico's Note for Trial Setting.

II. EXPRESS RESERVATION OF RIGHT TO PURSUE CROSS CLAIM

Miller also argues that: (1) a "settlement agreement encompasses all existing claims between all parties, and none

---

[7]Miller does allege that Chico indicated before settlement an intent to drop its cross claim if the case settled before trial.

will be saved absent an express reservation of rights";[8] and (2) Chico failed expressly to reserve in the February 1998 order a right to pursue its cross claim. Chico responds that: (1) the cases Miller cites are factually distinguishable and, thus, inapplicable here; and (2) even if these cases are applicable, the February 1998 order contains language that, when viewed in context, clearly indicates Chico's intent to preserve its claim against Miller.

There is no support for Miller's argument that only an express phrase, such as "Chico expressly reserves the right to pursue its cross claim against Miller," would have been adequate to preserve Chico's cross claim. The cases cited by Miller, *Mutual of Enumclaw Ins. Co. v. State Farm Mut. Auto. Ins. Co.*, 37 Wn. App. 690, 694, 682 P.2d 317 (1984), and *Nationwide Mut. Fire Ins. Co. v. Watson*, 120 Wn.2d 178, 189, 840 P.2d 851 (1992), do not apply here because both concerned general releases; neither case involved limiting language that would have prompted the court to define an adequate "express reservation of rights."[9] Both referred to releases of "all claims" arising from the respective incidents at issue in the cases; neither release contained any limiting language.

In contrast, here, there was limiting language: Not all claims were dismissed stemming from the August 17, 1995 incident; only those claims "between plaintiffs and defendants" were dismissed. Although an additional phrase would have underscored the parties' intent, it would also have been entirely superfluous. Chico did not draft the settlement stipulation, but it did hold out for a change in wording from the original proposal.

We hold that the language "between plaintiffs and defendants" is sufficient, both standing alone and viewed in the

---

[8]Miller cites *Mutual of Enumclaw*, 37 Wn. App. at 694, and *Watson*, 120 Wn.2d at 193.

[9]*Mutual of Enumclaw* concerned a Stipulation and Order of Dismissal stating that "[a]ll claims in this action shall be dismissed with prejudice and without costs." 37 Wn. App. at 694. The release at issue in *Watson* released "any and all claims . . . of any kind or nature whatsoever, and particularly on account of all injuries to Mark Watson[.]" 120 Wn.2d at 189.

context of the circumstances surrounding the stipulation, to preserve Chico's cross claim against Miller.[10]

## CONCLUSION

We reverse the trial court's Order Striking Note for Trial Setting, reinstate Chico's and Miller's cross claims against each other,[11] and remand for further proceedings.

MORGAN and HOUGHTON, JJ., concur.

---

[10]Miller argues that, even were we to find the February 1998 order ambiguous, we should nonetheless uphold it in the interest of "constru[ing the settlement] as final." Chico responds that, even if we find the February 1998 order ambiguous, we must remand the case to the trial court to determine the parties' intent. Although we need not address this issue because the order was not ambiguous, we note that: we agree with Miller that the February 1998 order is final; but we also agree with Chico that the order is final as to only the plaintiffs' claims against defendants Chico and Miller, collectively. The parties partially settled this case privately; Chico, at least, intended to negotiate further with Miller to settle the remaining cross claims. The actions in this case and our interpretation of the settlement language do not contravene public policy encouraging private settlements. *See Watson*, 120 Wn.2d at 186-87.

[11]Although Miller did not cross-appeal, our interpretation of the settlement order, as effectuating dismissal of only plaintiffs' claims against defendants, leaves intact each defendant's cross claim against the other.