116 P.3d 409 (2005)
WM. DICKSON COMPANY, a Washington Corporation, Appellant,
v.
PIERCE COUNTY, a Washington Municipal Corporation, Respondent.
No. 31798-2-II.
Court of Appeals of Washington, Division Two.
July 19, 2005.
*411 Douglas Wayne Hales, Attorney at Law, Olympia, WA, for Appellant.
Ronald La Mar Williams, Pierce County Prosecutors Office, Tacoma, WA, for Respondent.
HOUGHTON, P.J.
¶ 1 The Wm. Dickson Company (Dickson) appeals an order dismissing its breach of contract lawsuit, arguing that material facts precluded summary judgment. We agree and reverse and remand for further proceedings.

FACTS
¶ 2 Pierce County (County) owns a gravel pit adjacent to Waller Road. Dickson is a construction company that owns a neighboring gravel pit.
¶ 3 In 1973, the County entered into a lease and real estate contract with Asphalt Paving & Engineering Company, one of Dickson's predecessors in interest. In 1988, the County filed suit, alleging that Dickson had not complied with the 1973 lease agreement. The parties attempted to settle the litigation.
¶ 4 On March 23, 1990, Dickson's counsel, Thomas Dickson,[1] sent to a letter to Lloyd Nickel, counsel for the County. Mr. Dickson stated that this letter memorialized the parties' settlement terms. In part, the letter provided that Dickson would convey seven acres to the County.[2] It also described the County's rights to dump fill on that land:
The county shall also have the right to fill the seven acres, provided however, that only the county and its equipment may perform the filling-not its agents (unless a branch or governmental subdivision of the county), non-county subcontractors, or non-county permittees.
Clerk's Papers (CP) at 23.
¶ 5 In a letter dated December 12, 1990, William Hess informed Mr. Dickson that he now represented the County in this matter. He indicated that Dickson's proposed settlement terms may not be acceptable:
In reviewing the County's file I became familiar with your letter[ ] to Mr. Nickel dated March 23, 1990 . . . wherein you discussed your understanding of a proposed settlement. I would like to meet with you to make certain we are in complete agreement as to what has been proposed as a settlement agreement. The County may not be able to enter into the proposed settlement agreement [if] my understanding of it is correct.
CP at 28.
¶ 6 Nearly a year later, the parties entered a stipulated judgment. Drafted by the County, the stipulation provided that Dickson would convey seven acres to the County. Both parties could place fill on those seven acres:
3. [Dickson] shall . . . have the right to place fill, and the right to allow third parties to place fill, on the [seven acres] for a period of time ending at the earlier date of either of the following two events:
a. The tenth anniversary of the date this judgment is approved and signed by the above court.
b. The date the placement of fill reaches a maximum elevation of 262 feet
. . . .
[The County] shall have the right to place fill at whatever location and to whatever elevation it deems appropriate, on the [seven acres] during the period of time that defendant may place fill on said lands, but shall not give third parties permission to place fill on said lands during that period of time.

CP at 32 (emphasis added). A judge signed and entered the judgment on December 2, 1991. After entry of the judgment, the County owned 40 acres at the Waller Road site, a 7-acre parcel and a 33-acre parcel.
¶ 7 In 1995, Pierce County Surface Water Management constructed a major storm water management facility on Squally Creek. *412 The County requested project bids, which included dumping into the Waller Road landfill. Dickson submitted an unsuccessful bid. Instead, the County accepted the bid of Tucci and Sons (Tucci).
¶ 8 As part of the Squally Creek project, Tucci dumped material into the Waller Road landfill. The parties agree that Tucci dumped about 135,000 cubic yards of fill. They dispute, however, when Dickson had notice of the dumping. They also disagree about whether Tucci dumped fill onto the 7 acres addressed in the stipulation or onto the remaining 33 acres of the landfill.
¶ 9 Between 1991 and 1997, Dickson dumped approximately 25,000 cubic yards onto the seven acres. In 1997, it stopped dumping because the pit reached an elevation of 262 feet, the height specified in the stipulation.
¶ 10 On March 22, 2002, Dickson filed a complaint, alleging breach of contract. Dickson claimed that the County allowed a third party to fill dump onto the seven acres, thereby preventing it from dumping. The County's answer asserted several affirmative defenses, including an allegation that the statute of limitations barred Dickson's claim.
¶ 11 Both parties moved for summary judgment. The trial court entered summary judgment in the County's favor.
¶ 12 Dickson appeals.

ANALYSIS

Standard of Review
¶ 13 We review orders granting summary judgment de novo, engaging in the same inquiry as the trial court. Atherton Condo. Apartment-Owners Ass'n Bd. of Dir. v. Blume Dev. Co., 115 Wash.2d 506, 515-16, 799 P.2d 250 (1990). We view the facts and all reasonable inferences therefrom in the light most favorable to the nonmoving party. Vallandigham v. Clover Park Sch. Dist. No. 400, 154 Wash.2d 16, 109 P.3d 805, 810 (2005). On review of any pleadings, depositions, answers to interrogatories, admissions, and affidavits on file, summary judgment is available if there is no genuine issue as to any material fact, thus entitling the moving party to judgment as a matter of law. Vallandigham, 109 P.3d at 810; CR 56(c).[3] Summary judgment is appropriate if reasonable persons could reach but one conclusion. Wilson v. Steinbach, 98 Wash.2d 434, 437, 656 P.2d 1030 (1982).

Contract Claim
¶ 14 Dickson contends that the trial court erred when it (1) granted the County's motion for summary judgment and (2) denied its motion for summary judgment.
¶ 15 Contract principles govern final judgments entered by stipulation or consent. Martinez v. Kitsap Pub. Servs., Inc., 94 Wash.App. 935, 942, 974 P.2d 1261 (1999). When interpreting a contract, our primary objective is to discern the parties' intent. Tanner Elec. Coop. v. Puget Sound Power & Light, 128 Wash.2d 656, 674, 911, P.2d 1301 (1996). "Unilateral or subjective purposes and intentions about the meanings of what is written do not constitute evidence of the parties' intentions." Lynott v. Nat'l Union Fire Ins. Co., 123 Wash.2d 678, 684, 871 P.2d 146 (1994). "[E]xtrinsic evidence is admissible as to the entire circumstances under which the contract was made, as an aid in ascertaining the parties' intent"[4]Berg v. *413 Hudesman, 115 Wash.2d 657, 667, 801 P.2d 222 (1990). As a general rule, we consider the parties' intentions questions of fact. Paradise Orchards Gen. P'ship v. Fearing, 122 Wash.App. 507, 517, 94 P.3d 372 (2004), review denied, 153 Wash.2d 1027, 110 P.3d 755 (2005).
¶ 16 We give undefined terms their " `plain, ordinary, and popular' " meaning. Kitsap County v. Allstate Ins. Co., 136 Wash.2d 567, 576, 964 P.2d 1173 (1998) (quoting Boeing Co. v. Aetna Cas. & Sur. Co., 113 Wash.2d 869, 877, 784 P.2d 507 (1990)). This meaning may be ascertained by reference to standard English dictionaries. Queen City Farms, Inc. v. Cent. Nat'l Ins. Co., 126 Wash.2d 50, 77, 882 P.2d 703 (1994).
¶ 17 We interpret clear and unambiguous terms as a question of law. Paradise, 122 Wash.App. at 517, 94 P.3d 372. An ambiguous provision is one fairly susceptible to two different, reasonable interpretations. McDonald v. State Farm Fire & Cas. Co., 119 Wash.2d 724, 733, 837 P.2d 1000 (1992). But a contract is not ambiguous simply because the parties suggest opposing meanings. Martinez, 94 Wash.App. at 944, 974 P.2d 1261.
¶ 18 Finally, summary judgment is proper if the written contract, viewed in light of the parties' objective manifestations, has only one reasonable meaning. Go2Net, Inc. v. C I Host, Inc., 115 Wash.App. 73, 83, 60 P.3d 1245 (2003).
¶ 19 Here, the provision at issue stated:
[The County] shall have the right to place fill at whatever location and to whatever elevation it deems appropriate, on the [seven acres] during the period of time that defendant may place fill on said lands, but shall not give third parties permission to place fill on said lands during that period of time.
CP at 66.
¶ 20 The contract did not define the term "third parties." Thus, we turn to standard dictionaries to ascertain its meaning. Queen City Farms, 126 Wash.2d at 77, 882 P.2d 703. Webster's Dictionary defines "third party" as "a person other than the principals." WEBSTER'S THIRD NEW INT'L DICTIONARY 2378 (1976). Black's Dictionary provides that the term means "[a] person who is not a party to a lawsuit, agreement, or other transaction but who is [usually] somehow implicated in it; someone other than the principal parties." BLACK'S LAW DICTIONARY 1518 (8th ed.2004).
¶ 21 These definitions support different interpretations of the term "third parties." This term could reasonably mean, as Dickson suggests, any entity not party to the contract. Tucci did not sign the stipulation and judgment. It was not a party to the negotiations. Accordingly, Tucci's actions constituted a breach under Dickson's reasonable interpretation.
¶ 22 But the term "third parties" could reasonably mean, as the County argues, legal entities other than the County. Under agency principles, the County and Tucci functioned as a single legal entity. See 3 Am. Jur.2d Agency § 1 (2004) (stating that "[p]ursuant to the grant of authority by the principal, the agent is the representative of the principal and acts for, in the place of, and instead of, the principal") (footnote omitted). Thus, no "third party" is involved.
¶ 23 Because more than one reasonable interpretation is possible here, the trial court erred when it granted the County's motion for summary judgment. Accordingly, we reverse and remand for a hearing on the merits.

Statute of Limitations
¶ 24 The parties agree that the trial court based its decision solely on the contract claim. Because we may affirm the lower court on any ground supported by the record and established by the pleadings, In the Matter of the Marriage of Rideout, 150 Wash.2d 337, 358, 77 P.3d 1174 (2003), the County argues that Dickson's claim must be dismissed as time-barred.
*414 ¶ 25 RCW 4.16.040[5] provides a six-year statute of limitations for actions based on written contracts. The party asserting the time bar bears the burden of proof. Mayer v. City of Seattle, 102 Wash. App. 66, 76, 10 P.3d 408 (2000), review denied, 142 Wash.2d 1029, 21 P.3d 1150 (2001). Generally, the statute of limitations in a contract action begins to run at the time of breach. N. Coast Enters., Inc. v. Factoria P'ship, 94 Wash.App. 855, 859, 974 P.2d 1257, review denied, 138 Wash.2d 1022, 989 P.2d 1137 (1999). Under the discovery rule, however, the "statute of limitation for contract actions begins to run when a party knows or, in the exercise of due diligence should know, of the other party's breach." Architechtonics Constr. Mgmt., Inc. v. Khorram, 111 Wash.App. 725, 737, 45 P.3d 1142 (2002), review denied, 148 Wash.2d 1005, 60 P.3d 1212 (2003).
¶ 26 Here, Dickson filed the action on March 22, 2002, making his action timebarred unless the discovery rule applies.[6] Thus, we examine when Dickson knew, or should have known in the exercise of due diligence, of the County's alleged breach.
¶ 27 In 1995, Dickson bid on the Squally Creek project, knowing that it included dumping onto the Waller Road landfill. But no evidence shows that Dickson knew that this dumping would occur on the relevant seven acres. As the successful bidder, Tucci dumped about 135,000 cubic yards of fill somewhere in the landfill.[7] But the County did not produce evidence that Tucci dumped fill on the seven acres covered by the contract.
¶ 28 Further, the County does not assert that Dickson had actual notice. Rather, it claims that the bidding process and the significant amount of fill being placed on the Waller Road site put Dickson on inquiry notice.
¶ 29 Certainly Dickson had notice that the landfill rose in elevation. But under the contract terms, the County itself could place fill at the Waller Road site. Simply because the landfill contained more material did not place Dickson on notice that the County breached the agreement.
¶ 30 Thus, genuine issues of material fact exist as to when Dickson reasonably should have known that Tucci dumped fill on the seven acres.
¶ 31 Genuine issues of material fact preclude summary judgment on either the contract or statute of limitations grounds. We reverse and remand for further proceedings.
We concur: BRIDGEWATER and ARMSTRONG, JJ.
NOTES
[1] For clarity, we refer to the appellant as "Dickson" and its former counsel as "Mr. Dickson."
[2] The 1988 lawsuit concerned these seven acres. At issue in the current matter is the ability of third parties to dump fill on this same parcel.
[3] CR 56(c) provides, in relevant part: "The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."
[4] The parties offer extrinsic evidence, but it is inconclusive as to their intent. The March 1990 letter provides that the County's "agents[,] . . . non-county subcontractors, or non-county permittees" were not allowed to dump on the parcel. CP at 23. Assuming it represented the mutual intent of the parties, see CP at 23 (stating that Mr. Dickson was "memorializing . . . the terms of the settlement [he and Nickel] . . . agreed to several weeks ago"), this letter supports Dickson's contention that the County's use of agents breached the contract. CP at 23. But the County appeared to reject these terms in its December 1990 letter when it stated that it "may not be able to enter into the proposed settlement agreement [if counsel's] understanding of it is correct." CP at 28. Then a year passed, during which time the parties continued to negotiate. These negotiations are not part of the appellate record. Because we do not have evidence of these later negotiations, we cannot determine the intent of the parties at the time of formation. As such, the extrinsic evidence offers no guidance.
[5] RCW 4.16.040 provides, in relevant part: "The following actions shall be commenced within six years: (1) An action upon a contract in writing, or liability express or implied arising out of a written agreement."
[6] The County claims that Tucci dumped fill at the Waller Road site in July 1995. If this constituted breach, the statute of limitations expired in July 2001.
[7] The County argues that Tucci's actions were not "inherently undetectable," citing Architechtonics, 111 Wash.App. at 734, 45 P.3d 1142. Respondent's Br. at 15. Division One recently addressed a similar contention, where it rejected the party's reliance on that phrase:

We did not characterize the defects in Architechtonics as "inherently undetectable," and we now observe that this phrase does not have the meaning [the party] wishes to ascribe to it. For the discovery rule to apply, the breach must have been undiscovered (latent) and the plaintiff must show he or she reasonably failed to discover it (the "knew or should have known" test). The phrase "not inherently undetectable" . . . means only that the plaintiff failed the "should have known" test as a matter of law, making the discovery rule irrelevant.
1000 Virginia Ltd. P'ship v. Vertecs Corp., No. 54485-3, 2005 WL 1323344, at *4, ___ Wash. ___, 112 P.3d 1276 (2005).