IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | | |
|---|---|---|
| HARLEY MARINE SERVICES, INC., a Washington Corporation, and OLYMPIC TUG & BARGE, INC., a Washington Corporation, | ) ) ) ) ) | No. 81233-5-I<br><br>DIVISION ONE<br><br>UNPUBLISHED OPINION |
| Appellants, | ) ) | |
| v. | ) ) | |
| SVEN CHRISTENSEN, and the marital community composed thereof, Washington State residents, | ) ) ) ) | |
| Respondent. | ) ) ) | |

HAZELRIGG, J. — Harley Marine Services, Inc. and Olympic Tug & Barge, Inc. seek reversal of a superior court order denying their motion to compel arbitration of counterclaims brought by their former employee, Sven Christensen. They contend that the court erred in ruling that an arbitration provision that Christensen accepted as part of his initial application for a position as port captain did not apply to his subsequent role as regional vice president. Because the language and objective of the contract as a whole indicate that the agreement was only intended to cover the position referenced in the application, we affirm.

Citations and pinpoint citations are based on the Westlaw online version of the cited material.

FACTS

Olympic Tug & Barge, Inc. (Olympic), a subsidiary of Harley Marine Services, Inc. (Harley), provides fuel bunkering services to commercial vessels in Washington and elsewhere on the west coast of the United States. Sven Christensen applied for a port captain position with Olympic in December 2005. The employment application included nine preemployment certifications that Christensen was required to initial individually. One contained an arbitration provision: "Any claim or controversy arising out of either the failure to offer employment, or the termination of my employment . . . shall be submitted to binding arbitration in accordance with the J-A-M-S/Endispute Arbitration Rules and Procedures for Employment Disputes." Christensen initialed all nine certifications. He also signed the application under an acknowledgement that his signature certified his agreement "to be bound by the terms and conditions stated in this application, including the arbitration provision set forth above."

Christensen was hired as a port captain on January 1, 2006. He was promoted to general manager of Olympic around September 2006. He did not complete a new application before accepting the new position. In March 2017, he was promoted again to a regional vice president role. In October 2018, Christensen negotiated and signed an employment agreement with Harley Franco, the chief executive officer of Harley. The 2018 employment agreement did not contain an arbitration provision, nor did it explicitly incorporate, supersede, or merge with the original employment application. Christensen occupied the regional vice president role until the end of his employment in July 2019.

In September 2019, Harley and Olympic (collectively, HMS) filed suit against Christensen, alleging tortious interference with business expectancy, breach of the duty of loyalty, breach of the Washington Uniform Trade Secrets Act[1] and unfair competition, and unjust enrichment. Christensen counterclaimed against both entities for breach of the 2018 employment agreement, defamation/libel, false light invasion of privacy, and blacklisting. HMS moved to compel arbitration of Christensen's counterclaims. The trial court denied the motion, ruling that (1) the arbitration agreement from the employment application applied only to the port captain position that Christensen originally held, (2) the arbitration agreement did not apply to Christensen's subsequent positions at Olympic or HMS, (3) the 2018 employment agreement between Harley Franco and Christensen did not require arbitration of Christensen's claims, and (4) Christensen's counterclaims did not arise out of his employment as a port captain at Olympic. HMS appealed.

ANALYSIS

HMS argues that the trial court erred in concluding that the contract containing the parties' agreement to arbitrate applied only to Christensen's original position as port captain and not to his employment as a vice president. We review a trial court's decision on a motion to compel arbitration de novo. Zuver v. Airtouch Commc'ns, Inc., 153 Wn.2d 293, 302, 103 P.3d 753 (2004).

As the parties acknowledged at oral argument, before deciding whether specific claims are subject to arbitration, the trial court must determine whether a

---

[1] Ch. 19.108 RCW.

- 3 -

valid agreement to arbitrate is in effect. See Heights at Issaquah Ridge, Owners Ass'n v. Burton Landscape Grp., Inc., 148 Wn. App. 400, 405, 200 P.3d 254 (2009) ("'[I]t is the court's duty to determine whether the parties have agreed to arbitrate a particular dispute.'" (quoting Peninsula Sch. Dist. No. 401 v. Pub. Sch. Emps. of Peninsula, 130 Wn.2d 401, 413, 924 P.2d 13 (1996))). The usual rules of contract interpretation govern interpretation of an employment contract. Kloss v. Honeywell, Inc., 77 Wn. App. 294, 298, 890 P.2d 480 (1995). Washington follows the objective theory of contract interpretation, under which courts must attempt to ascertain the intent of the parties from the objective manifestations of the agreement and ordinary meaning of the words within the contract. Hearst Commc'ns, Inc. v. Seattle Times Co., 154 Wn.2d 493, 503–04, 115 P.3d 262 (2005). We determine the intent of the contracting parties by considering the language of the agreement as well as "the contract as a whole, the subject matter and objective of the contract, all the circumstances surrounding the making of the contract, the subsequent acts and conduct of the parties to the contract, and the reasonableness of respective interpretations advocated by the parties." Martinez v. Miller Indus., Inc., 94 Wn. App. 935, 943, 974 P.2d 1261 (1999) (quoting Tanner Elec. Coop. v. Puget Sound Power & Light, 128 Wn.2d 656, 674, 911 P.2d 1301 (1996)).

HMS contends that the arbitration provision applies to Christensen's employment in general and is not restricted to his specific role as a port captain. In support of its argument, it points out that many of the individual certifications refer to the applicant's employment in general terms:

> If employed by Olympic Tug & Barge, I will abide by Company rules and practices. I understand that I will be required to possess a current U.S. Coast Guard Merchant Mariner's Document.
>
> . . .
>
> I agree to submit to legally permissible drug and alcohol testing upon request by Olympic Tug & Barge. I recognize that the results of these tests may be used to determine my employment or continued employment. I understand and expressly agree that if employed by Olympic Tug & Barge, storage areas provided for me are open to investigation by the Company without prior notice to me.
>
> . . .
>
> If I am employed by Olympic Tug & Barge, I understand my employment can be terminated, with or without cause and with or without notice, at any time at the option of the Company or myself.[ ] Only the President of the Company has the authority to make any agreement contrary to the foregoing and then only in writing. I further expressly agree that, with respect to the at-will employment relationship, this constitutes the full, complete and final expression of the parties' intent concerning the nature of any employment relationship between myself and Olympic Tug & Barge.

The broad language of these provisions relating to the applicant's "employment" indicates that the certifications apply regardless of the specific position held by the employee.

However, Christensen points to the first preemployment certification contained in the 2005 application as evidence that the agreement applies only to the port captain position: "I understand that this application is only valid for the position applied for at present and that Olympic T&B is not obligated to retain or consider this application for future openings." HMS contends that this language means that Christensen would need to reapply to be considered for other positions but does not limit the subsequent certifications to the port captain position.

Although many of the certifications refer to the applicant's employment in broad terms, the subject matter and objective of the contract weighs against applying its terms to the employment relationship as a whole. The terms governing Christensen's employment are all presented in the context of being offered the specific position for which he was applying: the position of port captain. The phrasing of the first certification bolsters this conclusion. The interpretation that HMS proposes would require a distinction between the application and the preemployment certifications to conclude that, although the application was only valid for the port captain position, the certifications remained valid for Christensen's employment as a whole. However, the certifications are presented as part of the employment application, not as a separate employee agreement. By tying the certifications to the application for a specific position, HMS limited the applicability of the contract. HMS does not appear to argue that Christensen's counterclaims arise out of his employment as port captain. The trial court did not err in concluding that the arbitration provision in the 2005 agreement applied only to Christensen's position as port captain.[2]

HMS argues that the trial court erred in determining the issue of arbitrability rather than deferring this determination to an arbitrator. Because the court ruled that the arbitration provision did not apply to Christensen's employment as vice president, it did not consider whether his counterclaims arose from his employment

---

[2] HMS argues that the trial court "implicitly concluded that the [2018 employment agreement] constituted a completely integrated agreement, superseding the Olympic T&B arbitration agreement." However, the record does not support this characterization. The court determined that the 2005 certifications never applied to the 2018 agreement, not that the 2018 agreement nullified them.

in that role. Accordingly, the trial court's order did not determine whether Christensen's counterclaims were arbitrable; that is, it did not decide whether they fell within the scope of a valid arbitration provision. We need not address the remaining arguments made by HMS.

Affirmed.

WE CONCUR: