**MICROSOFT CORPORATION,**
Plaintiff,

v.

**MOTOROLA, INC., et al., Defendants.**

**Case No. C10–1823JLR.**

United States District Court,
W.D. Washington,
at Seattle.

Feb. 27, 2012.

---

**193.** Dkt. # 441, ¶ 1.5

Brian R. Nester, Sidley Austin, Washington, DC, David Greenfield, Sidley Austin, Chicago, IL, for Plaintiff.

Jesse J. Jenner, Steven Pepe, Stuart W. Yothers, Ropes & Gray LLP, New York, NY, Lynn M. Engel, Philip S. McCune, Ralph H. Palumbo, Summit Law Group, Seattle, WA, Norman H. Beamer, Ropes & Gray LLP, East Palo Alto, CA, Paul M. Schoenhard, Ropes & Gray, Washington, DC, for Defendants.

David E. Killough, T. Andrew Culbert, Microsoft Corp., Redmond, WA, David T. Pritikin, Douglas I. Lewis, John W. McBride, Richard A. Cederoth, Sidley Austin, Chicago, IL, Christopher T. Wion, Arthur W. Harrigan, Jr., Shane P. Cramer, Danielson Harrigan Leyh & Tollefson, Seattle, WA, for Plaintiff and Defendants.

ORDER ON PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT

JAMES L. ROBART, District Judge.

## I. INTRODUCTION

This matter comes before the court on Plaintiff Microsoft Corporation's ("Microsoft") motion for partial summary judgment (Mot. (Dkt. # 77)). The court has reviewed Microsoft's motion, Defendants Motorola, Inc., Motorola Mobility, Inc., and General Instrument Corporation's (collectively, "Motorola") response (Resp. (Dkt. # 90)), Microsoft's reply (Reply (Dkt. # 96)), all other pertinent documents in the record, and the relevant law. For the reasons set forth below, the court

GRANTS in part and DENIES in part Microsoft's motion.[1]

## II. BACKGROUND

### A. The IEEE and the ITU as Standard Setting Organizations

Microsoft and Motorola are both members of the Institute of Electrical and Electronics Engineers ("IEEE") and the International Telecommunication Union ("ITU"). (Mot. at 9.) The IEEE and the ITU, neither of which are parties to the instant dispute, are international standards setting organizations. Standards setting organizations ("SSOs") play a significant role in the technology market by allowing companies to agree on common technological standards so that all compliant products will work together. Standards lower costs by increasing product manufacturing volume, and they increase price competition by eliminating "switching costs" for consumers who desire to switch from products manufactured by one firm to those manufactured by another.

One complication with standards is that it may be necessary to use patented technology in order to practice them. If a patent claims technology selected by a SSO, the patent is called an "essential patent." Here, Motorola is the owner of several declared-essential patents to certain standards established by the IEEE and the ITU. (See Mot. at 10.) In order

to reduce the likelihood that owners of essential patents will abuse their market power, many SSOs, including the IEEE and the ITU, have adopted rules related to the disclosure and licensing of essential patents. The policies often require or encourage members of the SSO to identify patents that are essential to a proposed standard and to agree to license their essential patents on reasonable and non-discriminatory ("RAND") terms to anyone who requests a license. Such rules help to insure that standards do not allow essential patent owners to extort their competitors or prevent them from entering the marketplace.

### B. Facts Relating to Microsoft's Present Motion

This lawsuit involves two standards—the IEEE 802.11 wireless local area network ("WLAN") Standard ("802.11 Standard") and the ITU H.264 advanced video coding technology standard[2] ("H.264 Standard"). (Mot. at 9–10.) The IEEE's standard setting process is governed by its Intellectual Property Rights Policy (the "IEEE Policy"). (See id. at 10–11.) The IEEE Policy provides that "IEEE standards may be drafted in terms that include the use of Essential Patent Claims." (IEEE Pol. (Dkt. # 79–1) at 18 (Section 6.2).) The IEEE Policy defines the term "Essential Patent Claim" as one or more claims in an

---

1. Both parties have requested formal oral argument. (Mot. at 1; Resp. at 1.) The court, however, determines that this motion is appropriate for decision without oral argument. The general rule is that the court may not deny a request for oral argument made by a party opposing a motion for summary judgment unless the motion is denied. *Dredge Corp. v. Penny*, 338 F.2d 456, 462 (9th Cir. 1964). Further, oral argument is not required if the party requesting oral argument suffers no prejudice. *Houston v. Bryan*, 725 F.2d 516, 517–18 (9th Cir.1984). Here, because the court is denying the portions of

Microsoft's motion opposed by Motorola, the court finds that Motorola is not prejudiced by the court's decision in this order. Furthermore, the issues relevant to the present motion were discussed at a February 13, 2012 status conference before the court.

2. The ITU developed the H.264 Standard jointly with two other SSOs—the International Organization for Standardization and the International Electrotechnical Commission. (Mot. at 9–10.)

issued patent (or pending patent application) that are "necessary to create a compliant implementation of either mandatory or optional portions of the normative clauses of the [Proposed] IEEE Standard . . . ." (*Id.*) If "Essential Patent Claims" are included in an IEEE standard, IEEE requires the patent holder to either state that it is not aware of any patents relevant to the IEEE standard or to provide the IEEE with a Letter of Assurance. (*Id.*) Any such Letter of Assurance must include either (1) a disclaimer to the effect that the patent holder will not enforce the "Essential Patent Claims," or (2):

> [a] statement that a license for a compliant implementation of the standard will be made available to an unrestricted number of applicants on a worldwide basis without compensation or under reasonable rates, with reasonable terms and conditions that are demonstrably free of any unfair discrimination. . . .

(*Id.*) With respect to the reasonableness or discriminatory nature of any license, the IEEE Policy states:

> The IEEE is not responsible for identifying Essential Patent Claims for which a license may be required, for conducting inquiries into the legal validity or scope of those Patent Claims, or *for determining whether any licensing terms or conditions provided in connection with submission of a Letter of Assurance, if any, or in any licensing agreements are reasonable or non-discriminatory.*

(*Id.* (emphasis added).) Motorola has submitted Letters of Assurance to the IEEE in connection with the 802.11 Standard stating that it "will grant" or "is prepared to grant" a license under RAND terms. (Mot. at 11.)

Like the IEEE, the ITU has established a policy (the "ITU Policy") with respect to

holders of patents "essential" to implementing a standard. (*See* ITU Pol. (Dkt. # 79–3).) Such patent holders must file with the ITU a "Patent Statement and Licensing Declaration" declaring whether they (1) will negotiate licenses free of charge on a RAND basis; (2) will negotiate licenses on a RAND basis; or (3) are not willing to comply with either of the first two options. (*See id.* at 9–12.) The ITU Policy and the Patent Statement and Licensing Declaration both state that "[s]uch negotiations are left to the parties concerned and are performed outside [the ITU]." (*Id.* at 9, 12.) Motorola has submitted Patent Statement and Licensing Declarations to the ITU with respect to its declared-essential patents relating to the H.264 Standard. (Mot. at 77.)

## C. Procedural History

This matter has a complex procedural history. Originally, the parties were involved in two separate actions, one in which Microsoft was the plaintiff, No. C 10–1823JLR (the "Microsoft Action"), and one in which Motorola was the Plaintiff, No. C11–0343JLR (the "Motorola Action"). On June 1, 2011, the court consolidated the two cases under Cause No. C10–1823JLR. (Order (Dkt. # 66 at 12).)

In the Microsoft Action, Microsoft's amended complaint alleges that through participation in the industry-standard setting process for both the 802.11 Standard and the H.264 Standard, Motorola agreed to offer licenses on RAND terms to Microsoft (and other potential licensees) for patents "essential" to practice the respective standards, and that Motorola has failed to fulfill these obligations. (*See* Microsoft Compl. (Dkt. # 53) ¶¶ 80–94.) Specifically, Microsoft alleges claims against Motorola for breach of contract and promissory

estoppel.[3] (*Id.*) In response, Motorola asserted affirmative defenses and counterclaims. (*See* Dkt. # 68.) Motorola's counterclaims, which are relevant to the instant motion for summary judgment, seek a declaratory judgment that (1) it has not breached any RAND obligations, and (2) Microsoft repudiated and/or rejected the benefits of Motorola's RAND obligations. (*Id.* ¶¶ 61–75 (Counterclaims).)

In the Motorola Action, Motorola's amended complaint for patent infringement[4] alleges that Microsoft infringed U.S. Patent Nos. 7,310,374; 7,310,375; and 7,310,376 (the "Motorola Patents"). (Motorola Compl. (C11–0343JLR, Dkt. # 29) ¶¶ 14–40.) The Motorola Patents relate to the H.264 video compression technology. (*See id.* ¶¶ 17, 26, 35.) Microsoft answered and asserted affirmative defenses, as well as counterclaims for (1) patent infringement as to U.S. Patent Nos. 6,339,780 and 7,411,582 (the "Microsoft Patents"); (2) breach of contract; and (3) promissory estoppel.[5] (Dkt. # 37 ¶¶ 11–20, 102–116.) The latter two claims are substantially (if not precisely) the same as the claims set forth by Microsoft in the Microsoft Action. (*Compare* C11–0343JLR, Dkt. # 37 ¶¶ 102–116 *with* C10–1823JLR, Dkt. # 53 ¶¶ 80–94.) In response to Microsoft's counterclaims, Motorola asserted 14 affirmative defenses and brought counterclaims seeking a declaratory judgment that (1) Motorola did not infringe the Microsoft Patents and that the Microsoft Patents are invalid; (2) Motorola met its RAND obligations; and (3) Microsoft re-

pudiated any rights associated with Motorola's RAND statements. (Dkt. # 67 ¶ 8 (Affirmative Defenses); Dkt. # 67 ¶¶ 9–90 (Counterclaims).) Motorola's latter two counterclaims are substantially (if not precisely) the same and seek the same relief as the counterclaims set forth by Motorola in the Microsoft Action. (*Compare* Dkt. # 67 ¶¶ 21–90 *with* Dkt. # 68 ¶¶ 61–75.)

Microsoft's present motion raises issues relating to the breach of contract and promissory estoppel claims that it asserted in both the Microsoft and Motorola Actions. Microsoft seeks a ruling that:

1. Motorola entered into binding contractual commitments with the IEEE and the ITU, committing to license its declared-essential patents on RAND terms and conditions;

2. Microsoft is a third-party beneficiary of Motorola's commitments to the IEEE and the ITU;

3. When offering a license to a third-party beneficiary of Motorola's commitments to the SSOs, Motorola must offer RAND terms and conditions;

4. Motorola's offers to Microsoft to license its H.264 and 802.11 declared-essential patents breached Motorola's RAND obligations because no reasonable trier of fact could conclude that the offers were on RAND terms and conditions.

(Mot. at 9.)

Microsoft's arguments on summary judgment are based on two "demand" let-

---

**3.** Microsoft's action against Motorola also included claims for waiver and declaratory judgment, but the court's June 1, 2011 order dismissed both of those claims, leaving only the breach of contract and promissory estoppel claims. (Order at 12.)

**4.** Motorola's amended complaint was filed in the Western District of Wisconsin, Civil Action No. 3:10–CV–699, before the case was

transferred to this court on February 2, 2012. (Dkt. # 45.)

**5.** Microsoft's counterclaims also included claims for waiver and declaratory judgment, but the court's June 1, 2011 order dismissed both of those claims, leaving only the two patent infringement claims and the breach of contract and promissory estoppel claims. (Order at 12.)

ters sent by Motorola to Microsoft relating to licensing of Motorola's declared-essential patents for practicing the 802.11 Standard and the H.264 Standard. (*See id.* at 12.) The first letter, which Motorola sent to Microsoft on October 21, 2010, read in pertinent part:

> This letter is to confirm Motorola's offer to grant Microsoft a worldwide non-exclusive license under Motorola's portfolio· of patents and pending applications having claims that may be or become Essential Patent Claims (as defined in section 6.1 of the IEEE bylaws) for a compliant implementation of the IEEE 802.11 Standards.... Motorola offers to license the patents under reasonable and non-discriminatory terms and conditions ("RAND"), including a reasonable royalty of 2.25% per unit for each 802.11 compliant product, subject to a grant back license under the 802.11 essential patents of Microsoft. As per Motorola's standard terms, the royalty is calculated based on the price of the end product (e.g., each Xbox 360 product) and not on component software (e.g., Windows Mobile Software).

(Dkt. # 79–5 at 2.) Then, on October 29, 2010, Motorola sent a similar letter regarding the patents related to the H.264 Standard, which stated:

> Motorola offers to license the patents on a non-discriminatory basis on reasonable terms and conditions ("RAND"), including a reasonable royalty, of 2.25% per unit for each H.264 compliant product, subject to a grant back license under the H.264 patents of Microsoft, and subject to any Motorola commitments made to JVT in connection with an approved H.264 recommendation. As per Motorola's standard terms, the royalty is calculated based on the price of the end product (e.g., each Xbox 360 product, each PC/laptop, each smartphone, etc.)

and not on component software (e.g., Xbox 360 system software, Windows 7 software, Windows Phone 7 software, etc.).

(Dkt. # 79–6 at 2.) Microsoft summary judgment motion argues that these two letters from Motorola breached Motorola's obligations to provide Microsoft and other IEEE and ITU members licenses to Motorola's declared-essential patents on RAND terms. (*See generally* Mot.)

## III. STANDARD OF REVIEW

Summary judgment is appropriate if the evidence, when viewed in the light most favorable to the non-moving party, demonstrates "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(a); *see also Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Galen v. Cnty. of L.A.,* 477 F.3d 652, 658 (9th Cir. 2007). The moving party bears the initial burden of showing there is no genuine issue of material fact and that he or she is entitled to prevail as a matter of law. *Celotex,* 477 U.S. at 323, 106 S.Ct. 2548. If the moving party meets his or her burden, then the non-moving party "must make a showing sufficient to establish a genuine dispute of material fact regarding the existence of the essential elements of his case that he must prove at trial" in order to withstand summary judgment. *Galen,* 477 F.3d at 658. The court is "required to view the facts and draw reasonable inferences in the light most favorable to the [non-moving] party." *Scott v. Harris,* 550 U.S. 372, 378, 127 S.Ct. 1769, 167 L.Ed.2d 686 (2007).

## VI. ANALYSIS

As stated above, Microsoft raises the following four issues: (1) whether Motorola entered into binding contractual com-

mitments with the IEEE and the ITU, committing to license its declared-essential patents on RAND terms and conditions; (2) whether Microsoft is a third-party beneficiary of Motorola's commitments to the IEEE and the ITU; (3) whether, when offering a license to a third-party beneficiary of Motorola's commitments to the SSOs, Motorola must offer RAND terms and conditions; and (4) whether Motorola's offers to Microsoft to license its H.264 and 802.11 declared-essential patents breached Motorola's RAND obligations. For the reasons described below, the court finds in Microsoft's favor on the first two issues, but concludes that Microsoft has not met its burden on summary judgment with respect to the third and fourth issues.

■ First, Microsoft's asks the court to find that: (1) Motorola entered into binding contractual commitments with the IEEE and the ITU, committing to license its declared-essential patents on RAND terms and conditions; and (2) Microsoft is a third-party beneficiary of Motorola's commitments to the SSOs. (Mot. at 9.) Motorola does not dispute either of these contentions.[6] (See generally Resp.). The court agrees with Microsoft that through Motorola's letters to both the IEEE and ITU, Motorola has entered into binding contractual commitments to license its essential patents on RAND terms. See, e.g., Research In Motion Ltd. v. Motorola, Inc., 644 F.Supp.2d 788, 797 (N.D.Tex.2008) (denying motion to dismiss where plaintiff stated breach of contract claim based on the defendant's failure to offer reasonable and non-discriminatory terms as it had promised European Telecommunications

Standards Institute and the IEEE); see also Ericsson Inc. v. Samsung Electronics, Co., Civil Action No. 2:06–CV–63, 2007 WL 1202728, at *1 (E.D.Tex. Apr. 20, 2007) (noting that the plaintiff and the defendant asserted claims for breach of contract and acknowledged that licensing obligations were contractual and bound all members of SSOs).

■ Additionally, the court finds that Microsoft, as a member of both the IEEE and the ITU, is a third-party beneficiary of Motorola's commitments to the IEEE and ITU. See ESS Tech., Inc. v. PC–Tel, Inc., No. C–99–20292 RMW, 1999 WL 33520483, at *4 (N.D.Cal. Nov. 4, 1999) (holding that the third-party beneficiary of contract between a SSO and the defendant, who held essential patents, had properly stated claim for specific performance of the agreement requiring the defendant to license patents on RAND terms). Accordingly, the court concludes that there is no genuine issue of material fact and that Microsoft is entitled to judgment as a matter of law with respect to the first two issues raised in Microsoft's motion.

Next, Microsoft asks the court to find that "[w]hen offering a license to a third-party beneficiary of Motorola's commitments to the SSOs, Motorola must offer RAND terms and conditions." (Mot. at 9.) Microsoft argues that because Motorola committed to make its essential patents relating to the 802.11 and H.264 Standards available to an unrestricted number of applicants on RAND terms, any offer by Motorola must likewise be on RAND terms.[7] (See id. at 18–20.) Microsoft re-

---

**6.** On February 13, 2012, the court held a status conference in which Motorola stated on the record that it did not dispute that it entered into the aforementioned binding contractual commitments with the IEEE and the ITU and that Microsoft is a third-party beneficiary of these commitments.

**7.** Microsoft contends that offers on non-RAND terms abuse the power granted to Motorola by the inclusion of Motorola's patents in the standards set by the IEEE and the ITU. (Mot. at 19–21.)

lies on *Zoran Corp. v. DTS, Inc.*, No. C 08–4655 JF (HRL), 2009 WL 160238 (N.D.Cal. Jan. 20, 2009), where the court briefly discussed the Bylaws of the Blu–Ray Disc Association ("BDA"), which provided for arbitration of disputes "over whether the [patent holding member] is offering a license" of its essential patents on RAND terms. *Id.* at *3–4.

In response, Motorola argues that the language of the IEEE Policy and the ITU Policy does not require Motorola to offer licenses on RAND terms, but only requires that completed licenses be on RAND terms. (Resp. at 13.) Motorola contends that both policies contain language that identifies a bilateral negotiation process where the responsibility of determining the precise RAND terms is left to the individual companies to negotiate. (*Id.* at 13–15.) According to Motorola, the determination of what constitutes RAND terms is highly fact-dependent and unique to each licensing situation, thereby making it impractical to require an offer to be on RAND terms when the offeror may not have all of the pertinent information about the potential licensee at the time it makes its initial offer. (*Id.* at 13–14.) Further, Motorola distinguishes *Zoran Corp.* arguing that the language contained in the BDA Bylaws spoke directly to "offering" a license on RAND terms, whereas the language in the IEEE Policy and ITU Policy is silent with respect to license offers, and instead focuses on the end result—a RAND license through bilateral negotiation. (*Id.* at 15.)

█ The parties' dispute regarding whether both the initial license offer and the final negotiated license (Microsoft's contention) or only the final negotiated license (Motorola's contention) must be on RAND terms requires the court to interpret the relevant contracts between Motorola and the SSOs. The parties' submissions, however, fail to sufficiently discuss the issues of contract interpretation that are now before the court. Microsoft, which carries the burden on this motion for summary judgment, fails to provide the court with any law on the issue of contract interpretation and does direct the court to any provision in the policies that is relevant to whether an initial offer must be on RAND terms. Instead, Microsoft argues that Motorola's "exorbitant" royalty demands are the opposite of Motorola's obligation to make its relevant patents available on RAND terms.[8] (*See* Mot. at 18–20.) Although Microsoft may ultimately prevail on this point, it has little to do with the issue at hand—how the court should interpret the IEEE and ITU Policies with respect to initial offers. In other words, Microsoft has jumped the gun by focusing on Motorola's actions as opposed to how the court should interpret the IEEE Policy and ITU Policy with respect to whether initial offers must be on RAND terms

For its part, Motorola similarly provides the court with no case law on the issue of contract interpretation and argues that the claim language of the policies dictates a finding in its favor. (Resp. at 13–15.) Although Motorola cites to specific provisions of the policies in support of its position, Motorola fails to explain how the those provisions fit into the framework of the applicable law of contract interpretation. The court does not find Motorola's *ipse dixit* argument compelling.

The parties' lack of briefing under the applicable law leaves the court to guess at,

---

**8.** Microsoft also points the court the *Zoran Corp.* case interpreting the Bylaws of the BDA. (Mot. at 21–22.) The court finds this attempted analogy unpersuasive because the relevant language of the Bylaws of the BDA is entirely different from the relevant language of the policies in question. (*See* Resp. at 15.)

among other things, which choice of law governs the policies, whether the policies are ambiguous,[9] whether review of extrinsic evidence is appropriate in interpreting the policies. Because Microsoft has failed to properly brief the issues the court must decide, the court finds that Microsoft has not carried its burden of showing an absence of material questions of fact and that it is entitled to prevail as a matter of law. Accordingly, the court denies Microsoft's motion for summary judgment with respect to the third issue—whether Motorola must offer on RAND terms and conditions.

The court would be remiss, however, to point out the holes in the parties' briefing without providing guidance for the path forward. Although the court does not intend to forecast any future rulings on this issue, the court expounds on its independent review of the IEEE Policy and ITU Policy. At the outset, the court notes that the policies make clear (and the parties do not dispute) that the patent holder of an essential patent must grant licenses on RAND terms. The court also notes that—as Motorola points out—both policies lend themselves to a negotiation process. For instance, the ITU Policy places a requirement on the patent holder to "negotiate licenses with other parties on a nondiscriminatory basis on reasonable terms and conditions." (Dkt. # 79–3 at 9–12.) Additionally, both policies state that the negotiating parties will determine the final RAND license, again indicating that the policies contemplate a negotiation process.

Motorola takes these statements to mean that it is not the initial offer that must be on RAND terms, but that through a give-and-take negotiation process, the parties will determine the RAND terms found in the final license agreement. At this time, the court is not entirely convinced by Motorola's rationale. First, at least with respect to the ITU Policy, Motorola's duty to "negotiate licenses ... on" RAND terms could reasonably be interpreted to require Motorola to make offers on RAND terms—an "offer" being part of a "negotiation" under such a reading of the policy. Second, as Microsoft points out, if the policies are read to permit Motorola to offer on non-RAND terms, then the policies would permit Motorola to make offers on exorbitant terms so long as the final license reflects RAND terms. It seems unlikely to the court that either the IEEE or the ITU would deem a patent essential for a certain standard only to permit that patent holder to turn around and abuse that power by seeking outrageously high royalty rates. To wit, during the February 13, 2012 status conference, counsel for Motorola agreed that blatantly unreasonable offers would violate its RAND obligations under the policies.

Still, the court is mindful that at the time of an initial offer, it is difficult for the offeror to know what would in fact constitute RAND terms for the offeree. Thus, what may appear to be RAND terms from the offeror's perspective may be rejected out-of-pocket as non-RAND terms by the offeree.[10] Indeed, it would appear that at any point in the negotiation process, the parties may have a genuine disagreement as to what terms and conditions of a license constitute RAND under the parties' unique circumstances. Because the poli-

---

9. Under the law in at least some states, ambiguous contracts must be interpreted by the fact finder and not the court on summary judgment. *See, e.g., Wm. Dickson Co. v. Pierce Cnty.*, 128 Wash.App. 488, 116 P.3d 409, 413 (2005).

10. Whether the policies require an offeree to counteroffer or respond (i.e., to partake in the negotiation process) prior to filing a lawsuit under circumstances where the offeree finds an offer to be on non-RAND terms is an open question in this matter.

cies leave it to the parties to determine what constitutes a RAND license, when such a genuine disagreement arises, it appears to the court that the only recourse for the parties is to file a lawsuit in the appropriate court of law.

This leads the court to its final observation on this point. Motorola asserts in its pleadings that Microsoft has repudiated its right to a RAND license by filing the present lawsuit rather than negotiating with Motorola towards a RAND license. (Dkt. # 67 ¶¶ 66–90 (Counterclaims).) The court is perplexed by Motorola's argument. As stated above, the court believes that reasonable parties may disagree as to the terms and conditions of a RAND license, leaving the courthouse as the only viable arena to determine the meaning of "reasonable" under the circumstances. It would be illogical, therefore, to deem it repudiation of one's rights under a policy to file a lawsuit to enforce one's rights under that same policy. The court leaves it to the parties to address, if they so choose, the court's observations regarding the policies in question pursuant to the briefing schedule set forth at the conclusion of this order.

Finally, with respect to the fourth issue in Microsoft's motion—that Motorola's offers to Microsoft breached Motorola's RAND obligations—the court finds that Microsoft has not met its burden of showing that no genuine issue of material fact exists and that it is entitled to judgment as a matter of law. Without knowing if Motorola had an obligation to offer on RAND terms, the court is unable to determine whether Motorola's offer in fact breached its obligations. Moreover, assuming that Motorola had obligations to offer on RAND terms, the court is unable to the merits of Microsoft's argument. Microsoft argues that Motorola's offers are unreasonable because the royalty demanded is based on the price of the end product and is "not tied to its claimed technological contribution." (Mot. at 22–24.) Microsoft has not provided the court with case law to support its assertion, and the court does not agree with Microsoft that it is always facially unreasonable for a proposed royalty rate to result in a larger royalty payment for products that have higher end prices. Indeed, Motorola has previously entered into licensing agreements for its declared-essential patents at royalty rates similar to those offered to Microsoft and with royalty rates based on the price of the end product. (Resp. at 17; *see also* Dkt. # 183 (example of Motorola licensing agreement on similar terms).) Motorola also has provided the court with at least one example of such a license. (*See* Dkt. # 183.) On the record before it, the court cannot say that there is no genuine dispute as to any material fact with respect to whether Motorola's initial offers were on RAND terms. Accordingly, the court denies Microsoft's motion for summary judgment with respect to Microsoft's fourth issue.

## IV. CONCLUSION

For the foregoing reasons, the court GRANTS in part and DENIES in part Microsoft's motion for summary judgment. The court GRANTS Microsoft's motion insofar as it finds that (1) Motorola entered into binding contractual commitments with the IEEE and the ITU, committing to license its declared-essential patents on RAND terms and conditions; and (2) that Microsoft is a third-party beneficiary of Motorola's commitments to the IEEE and the ITU. The court DENIES the remainder of Microsoft's motion.

As the parties are aware, to move the adjudication process forward with respect to the RAND-based issues in this case, the court intends to schedule a mini-trial on

any unresolved RAND-based issues. With that goal in mind, the court GRANTS leave, pursuant to the following briefing schedule, for Microsoft and Motorola to file additional summary judgment motions on the limited issues discussed below. If it so chooses, Microsoft may file another summary judgment motion on its breach of contract and promissory estoppel claims specifically addressing whether the IEEE Policy and ITU Policy require offers to be on RAND terms. If it so chooses, Motorola may file a summary judgment motion with respect to its claim that Microsoft repudiated its right to a license for Motorola's declared-essential patents on RAND terms. In their briefs, the parties at a minimum should address (1) the appropriate choice of law of contract interpretation; (2) whether either the IEEE Policy or the ITU Policy is ambiguous, within the meaning of the applicable law; and (3) what, if any, extrinsic evidence the court should consider in construing the policies. The parties are also welcome to address any of the court's observations regarding the IEEE Policy and ITU Policy. The parties' opening briefs shall be filed no later than March 30, 2012 and must not exceed 24 pages in length. Responsive briefs shall be filed no later than April 13, 2012 and must not exceed 24 pages in length. Reply briefs shall be filed no later than April 20, 2012 and must not exceed 12 pages in length. At the conclusion of this briefing schedule, the court will rule on the parties' motions and set a schedule for a mini-trial to dispose of all RAND-based issues remaining in this matter. The parties may contact the court telephonically with questions they may have regarding the content of this order. Counsel from both parties should be present during any such call.