IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| EXTERRA, LLC, a Washington Limited company, | ) ) ) | No. 31751-0-III |
| Appellant, | ) ) ) | |
| vs. | ) ) | |
| CLE ELUM GATEWAY PROPERTY, LLC, a Washington limited liability company; CORSTONE CONTRACTORS LLC, a Washington Limited liability company, | ) ) ) ) ) ) | UNPUBLISHED OPINION |
| Respondents, | ) ) | |
| TRAVELERS CASUALTY & SURETY COMPANY OF AMERICA, a bonding company, | ) ) ) ) | |
| Defendant. | ) | |

FEARING, J. — Exterra LLC (Exterra) sought to foreclose a materialmen's lien because, it alleged, Cle Elum Gateway Property LLC (Gateway) and Corstone Contractors LLC (Corstone) failed to pay for its construction services. Exterra also sued

Corstone for breach of contract. On summary judgment, the trial court dismissed Exterra's foreclosure claim because it previously released and waived its claim.

On appeal, Exterra argues summary judgment was improper because the waiver and release documents it signed are ambiguous and create an issue of material fact. Exterra also argues the court lacked jurisdiction to hear Corstone's summary judgment motion because it previously dismissed Corstone from the suit and despite Corstone remaining a defendant by reason of a cross-claim asserted by Gateway. Alternatively, Exterra argues Corstone waived any affirmative defense, including release and waiver, because Corstone failed to plead them. We affirm the trial court.

## FACTS

On September 15, 2010, Gateway contracted with Corstone to construct a McDonald's restaurant in Cle Elum, Washington. On September 29, Corstone subcontracted a portion of that work to Exterra. In exchange for Exterra's excavation and paving work, Corstone agreed to pay Exterra $48,704.

To receive payment for services, Exterra agreed to:

> submit to the CONTRACTOR applications for payment at such reasonable times as to enable the CONTRACTOR to timely apply for and obtain payment from OWNER. *Each application for payment shall include appropriate waivers and releases from SUBCONTRACTOR* and from its subcontractor's materialmen, suppliers, and third party independent contractors, if any, *for the period concerning which the SUBCONTRACTOR is requesting payment.*

Clerk's Papers (CP) at 10 (emphasis added). If the parties disputed their rights and

2

obligations under this contract, they agreed the substantially prevailing party was entitled to recover its expenses, including attorney fees and costs. Exterra also agreed to defend and indemnify Corstone from any actions arising out of the services it performed under the contract.

During the succeeding months, Exterra performed excavating, paving, and grading for the McDonald's restaurant lot. Corstone made three progress payments: $12,230.55 on November 29, 2010, $1,820.66 on January 18, 2011, and $264.06 also on January 18. Total payments were $14,315.27.

In accordance with the contract, Corstone required Exterra to sign waivers. On November 24, 2010, January 14, 2011, and February 3, 2011, Exterra executed "Unconditional Waiver and Release of Claims and Lien Upon Progress Payment." CP at 90, 133-34. We reproduce below only the last waiver since all three contain the same language other than the date covered and the amount Corstone paid. The waivers read:

> The undersigned does hereby waive and release any and all claims, of any type, kind or character, for labor, services, equipment, rented or supplied, and materials furnished, including any mechanic's or materialman's lien, equitable lien, stop notice, equitable adjustment, or bond claim (public or private) that the undersigned has or may ever have in any manner arising out of work, labor, services, equipment, material or supplies furnished by or through the undersigned in connection with the Project or the Contract through the date of 12/31/2010.
> The undersigned further warrants and certifies that as of the date of this waiver it has previously been paid a total of $14,315.27 in connection with the project.
> The undersigned hereby agrees to Indemnify and hold the Owner [Gateway] and Corstone Contractors LLC harmless from any claim, cause

3

of action or liability, including but not limited to costs, expenses, interest, and attorneys' fees arising from any claims hereafter made on account of work, labor, services, equipment, materials or supplies through the date of 12/31/2010. This waiver and release shall also be effective in the event of any bankruptcy court action that may ultimately deprive the undersigned of entitlement to the payment hereunder.

This is a partial Waiver and Release, the total unpaid balance of the Subcontract Agreement will be paid upon final cometion fo [sic] the Project.

CP at 90.

In addition to the unconditional waivers, Exterra executed two "Conditional Waiver and Release of Claims and Lien" on January 14 and February 3, 2011. CP at 135-36. In the conditional waivers, Exterra again agreed to fully waive and release any and all claims arising from the work it performed prior to December 31, 2010, "except for the following items which are in dispute _____." CP 135-36. In other words, the conditional waivers asked Exterra to identify any items it was not releasing. Exterra left both blanks empty.

Charles Tudor, owner of Exterra, signed a declaration in opposition to Corstone's summary judgment motion. In the affidavit, Tudor testified that Exterra's "last day on the job was January 4, 2011, however we were [Exterra was] on the job site on March 29, 2011." CP at 115.

On January 20, 2011, Exterra filed a claim of lien on the Cle Elum lot with the Kittitas County Auditor in the principal sum of $47,432.25, for labor, professional

4

services, and material. Exterra signed the lien on December 13, 2010. The lien identified January 4, 2011, as the last date that Exterra performed labor, provided services, or furnished materials.

## PROCEDURE

On May 12, 2011, Exterra sued to foreclose on its materialmen's lien and alleged Gateway and Corstone failed to pay for its construction services. On July 14, 2011, before Gateway or Corstone filed an answer, Exterra moved under CR 41 to voluntarily dismiss Corstone from its lien foreclosure suit. During the pendency of the motion, Gateway answered Exterra's complaint, asserted affirmative defenses, and filed a cross claim against Corstone. Corstone, Gateway alleged, was required to indemnify it from Exterra's claim. On July 28, 2011, the trial court granted Exterra's CR 41 motion and dismissed Corstone. The order does not mention the cross-claim filed by Gateway.

On September 13, 2011, Corstone filed its answer to Gateway and brought a counterclaim and third party claim. Corstone asserted the counterclaim against Exterra for failing to repair defective work. Corstone asserted the third-party claim against Charles Tudor and his wife because they personally guaranteed Exterra's performance.

On November 15, 2011, Exterra sent an e-mail to Gateway and Corstone questioning whether Corstone remained a party following Exterra's motion for voluntary dismissal. In response, Gateway, stated:

> In response to your e-mail dated November 15, 2011. Our records

show that our third party complaint against Corstone was filed on our abut [sic] July 20, 2011. The order dismissing Corstone was entered on July 28, 2011. I believe Corstone is dismissed from your client's claim but was not dismissed by my client's claims.

As I understand it, Corstone has filed an answer to our complaint and filed a third party complaint against Chuck Tudor based upon his personal guarantee of the contract. Again, if I am incorrect please advise.

CP at 156. Corstone responded to the group later that day, stating:

In my review of the file, I agree with the lay of the land described by Mr. Holt [counsel for Gateway]. Corstone also filed a Cross Claim against Exterra, which was sent to you in September. Answers are due from both Chuck Tudor and Exterra.

CP at 156.

Exterra never responded to the e-mails. On April 25, 2012, Exterra filed its answer to Corstone's cross claim and third-party complaint. In its answer, Exterra asserted that Corstone is not a party to the lien foreclosure action, although Exterra did not allege Corstone lacked standing to bring a cross claim against Exterra. On April 25, 2012, Exterra also filed a Note for Trial Setting, listing Corstone as a party.

In May 2012, Exterra responded to interrogatories and requests for production sent by Corstone. In an answer to one interrogatory, Exterra declared that Corstone owed $47,432.25. In another interrogatory, Corstone requested that Exterra state with particularity and describe in detail how it calculated its claim of lien. Exterra responded: "See the attached invoices and change orders." CP at 83. The attached invoices and change orders showed the last date of work to be November 16, 2010.

On June 27, 2012, Corstone sent Exterra a letter requesting Exterra file a release of lien and dismiss its lien foreclosure action based on the waivers Exterra previously signed. A month later, on July 24, 2012, Corstone again asked Exterra to voluntarily dismiss its lawsuit given the unconditional waiver it signed. Exterra never responded to either letter.

Based on the unconditional waivers Exterra signed, Corstone moved for summary judgment and Gateway joined. Exterra resisted the motion by arguing an ambiguity in the language of the waivers prevented the court from dismissing its lien foreclosure action. Its owner, Charles Tudor testified by declaration:

> In support of its motion for summary judgment, Corstone produces a copy of the Unconditional Waiver and Release of Claims and Lien Upon Progress Payment that I signed on February 3, 2011. That document was prepared by Corstone. My understanding of that document was that Exterra was waiving its right to claim a lien as to the monies that it had been paid on the project. However, Exterra was not waiving any such rights as to monies it had not been paid, but were due. That is evidenced by the statement.
> "This is a partial Waiver and Release, the total unpaid balance of the Subcontract Agreement will be paid upon final comletion fo [sic] the Project."

CP at 115.

Exterra also argued, in opposition to the defense summary judgment motion, that Corstone lacked standing since Exterra previously dismissed it from the complaint. The court postponed deciding Corstone and Gateway's summary judgment motion pending resolution of the standing issue.

7

In a supplemental brief to the court, Corstone argued it gained standing through the cross claim Gateway filed. The court agreed with Corstone and Gateway in a memorandum decision dated March 13, 2013. The court found Corstone had standing and dismissed Exterra's lien foreclosure action based on the waivers it executed.

On April 5, 2013, Exterra moved the court to reconsider its order. In its motion to reconsider Exterra argued for the first time Corstone could not bring a summary judgment motion because it did not raise release as a defense in its answer. Corstone argued it provided Exterra sufficient notice of its release defense in its June and July 2012 letters requesting Exterra dismiss its suit. On April 17, 2013, the court denied Exterra's motion to reconsider its order. Pursuant to the parties' contract, the trial court awarded Corstone reasonable attorney fees and costs in the sum of $25,607.74.

## LAW AND ANALYSIS

### *Jurisdiction*

Exterra first argues the trial court lacked jurisdiction to hear Corstone's summary judgment motion because Exterra previously dismissed Corstone from its lien foreclosure action. We question whether "jurisdiction" is the correct term to use in this context. Jurisdiction traditionally consists of two concepts. Subject matter jurisdiction governs the court's authority to hear a particular type of controversy, not a particular case. *Dougherty v. Dep't of Labor & Indus.*, 150 Wn.2d 310, 317, 76 P.3d 1183 (2003);

*Ralph v. Dep't of Natural Res.*, 171 Wn. App. 262, 267-68, 286 P.3d 992 (2012), *review granted*, 176 Wn.2d 1024, 301 P.3d 1047 (2013). Personal jurisdiction is jurisdiction over the parties by reason of consent, domicile, residence, presence, appearance in an action, or doing business in a state. *SCM Grp. USA, Inc. v. Protek Machinery Co.*, 136 Wn. App. 569, 574, 150 P.3d 141 (2007). The trial court held subject matter jurisdiction over a lien foreclosure on property within its county. The court held personal jurisdiction over the parties by reason of conducting business in the county. Rather than addressing jurisdiction, we review our civil rules to determine if the trial court had authority to entertain Corstone's summary judgment motion.

Voluntary dismissal is governed by CR 41. Under CR 41, a party has a mandatory, absolute right to dismissal of its action without prejudice, fixed on the day of the filing of the motion. *Calvert v. Berg*, 177 Wn. App. 466, 472, 312 P.3d 683 (2013). A defendant is not thereafter entitled to claim a setoff or seek affirmative relief so as to prevent the granting of a nonsuit. *Krause v. Borjessan*, 55 Wn.2d 284, 285, 347 P.2d 893 (1959). Entry of a judgment after the order of dismissal exceeds the jurisdiction of the court. *Cork Insulation Sales Co. v. Torgeson*, 54 Wn. App. 702, 705, 775 P.2d 970 (1989). Because Corstone filed its cross claim after Exterra dismissed it from the suit, Exterra argues the court lacked jurisdiction to grant Corstone summary judgment.

If Corstone was the only other party, Exterra would be correct. But Exterra also sued Gateway. Gateway, in turn, filed a cross claim against Corstone. Although Exterra filed its motion to dismiss before Gateway filed its cross claim and Corstone may have been dismissed upon the filing of the motion, Gateway could have joined Exterra as a third party defendant anyway. Exterra never objected to Corstone remaining a party to the suit as a result of the cross claim.

Gateway had the right to challenge the lien and to bring a summary judgment motion to dismiss the lien. In fact, Gateway joined Corstone's summary judgment motion and thus the motion could proceed as Gateway being the movant.

We find no Washington decision directly on point. But logic and economy compels our ruling. The trial court held authority to entertain the summary judgment motion.

### Failure to File Answer

Exterra next argues Corstone could not raise release or waiver as an affirmative defense because Corstone failed to plead the defenses. Under CR 8(c) a party "shall set forth affirmatively . . . release . . . and any other matter constituting an avoidance or affirmative defense." Generally, affirmative defenses are waived unless they are (1) affirmatively pled, (2) asserted in a motion under CR 12(b), or (3) tried by the express or implied consent of the parties. *Bickford v. City of Seattle*, 104 Wn. App. 809, 813, 17 P.3d 1240 (2001). A party does not waive its affirmative defense merely because it fails

10

to plead it. Where the party fulfills the policy goal animating the rule—to avoid

surprise—courts will permit the affirmative defense. *Henderson v. Tyrrell*, 80 Wn. App.

592, 624, 910 P.2d 522 (1996).

> It is to avoid surprise that certain defenses are required by CR 8(c) to be pleaded affirmatively. In light of that policy, federal courts have determined that the affirmative defense requirement is not absolute. Where a failure to plead a defense affirmatively does not affect the substantial rights of the parties, the noncompliance will be considered harmless. *Tillman v. National City Bank*, 118 F.2d 631, 635 (2d Cir.1941). Also, objection to a failure to comply with the rule is waived where there is written and oral argument to the court without objection on the legal issues raised in connection with the defense. *Joyce v. L.P. Steuart, Inc.*, 227 F.2d 407 (D.C. Cir. 1955). There is a need for such flexibility in procedural rules.

*Mahoney v. Tingley*, 85 Wn.2d 95, 100, 529 P.2d 1068 (1975).

We recognize that Corstone failed to plead release as an affirmative defense.

Nevertheless, Corstone notified Exterra of its defense by letters on June 27 and July 24,

2012, before it filed the summary judgment motion. In its motion opposing summary

judgment, Exterra did not object to Corstone's defense. Exterra did not raise CR 8 as a

bar to Corstone's defense until after it lost the summary judgment motion and moved for

reconsideration. Exterra waived any objection to the failure to plead release as an

affirmative defense when it preceded with written and oral argument on the issue.

*Summary Judgment Motion Merits*

Exterra contends summary judgment was improper because language in the

waivers is ambiguous and required extrinsic evidence to ascertain its meaning. This court

11

reviews summary judgment motions de novo, engaging in the same inquiry as the trial court. *Afoa v. Port of Seattle*, 176 Wn.2d 460, 466, 296 P.3d 800 (2013). Summary judgment is appropriate if there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. *Afoa*, 176 Wn.2d at 466. The interpretation of a contract can be a mixed question of law and fact. *Rekhter v. Dep't of Soc. & Health Servs.*, 180 Wn.2d 102, 134, 323 P.3d 1036 (2014). When the contract presents no ambiguity and no extrinsic evidence is required to make sense of the contract terms, contract interpretation is a question of law. *Rekhter*, 180 Wn.2d at 134.

An ambiguity exists if the language is susceptible to more than one reasonable interpretation. *Holden v. Farmers Ins. Co. of Wash.*, 169 Wn.2d 750, 756, 239 P.3d 344 (2010). A contract is not ambiguous simply because the parties suggest opposing meanings. *Martinez v. Kitsap Pub. Servs.*, 94 Wn. App. 935, 944, 974 P.2d 1261 (1999). An ambiguity will not be read into a contract where it can reasonably be avoided by reading the contract as a whole. *McGary v. Westlake Investors*, 99 Wn.2d 280, 285, 661 P.2d 971 (1983).

The release and waiver Exterra signed is a contract and its construction is governed by contract principles. *Barton v. Dep't of Transp.*, 178 Wn.2d 193, 208, 308 P.3d 597 (2013). To interpret such a release, courts looks to the parties' intent. *U.S. Life Credit Life Ins. Co. v. Williams*, 129 Wn.2d 565, 569, 919 P.2d 594 (1996).

Determination of the intent of the contracting parties is to be

12

accomplished by viewing the contract as a whole, the subject matter and objective of the contract, all the circumstances surrounding the making of the contract, the subsequent acts and conduct of the parties to the contract, and the reasonableness of respective interpretations advocated by the parties.

*Berg v. Hudesman*, 115 Wn.2d 657, 667, 801 P.2d 222 (1990) (quoting *Stender v. Twin City Foods, Inc.*, 82 Wn.2d 250, 254, 510 P.2d 221 (1973)). A court may consider extrinsic evidence to ascertain the parties' intent, but unilateral or subjective purposes and intentions about the meanings of what is written do not constitute evidence of the parties' intentions. *Lynott v. Nat'l Union Fire Ins. Co.*, 123 Wn.2d 678, 684, 871 P.2d 146 (1994); *Wm. Dickson Co. v. Pierce County*, 128 Wn. App. 488, 493, 116 P.3d 409 (2005). Extrinsic evidence is admissible as an aid to ascertain the parties' intent when it describes the circumstances under which the contract was made. *Berg*, 115 Wn.2d at 667.

Exterra argues the declaration of its managing member, Charles Tudor, created an ambiguity as to the intent of the parties. Tudor testified to his "understanding" that the release only waived Exterra's right to claim a lien as to monies already paid on the project, not any rights to monies it had not been paid, but were due. Tudor emphasizes the last sentence in the unconditional waiver: "[t]his is a partial Waiver and Release, the total unpaid balance of the Subcontract Agreement will be paid upon final comletion fo [sic] the Project." CP at 115.

13

Charles Tudor did not testify as to the circumstances under which the parties signed the release. Tudor's declaration testimony details his subjective belief as to the parties' intent. Subjective beliefs do not constitute evidence when construing and applying a contract.

Charles Tudor's testimony contradicts the plain language of the release. The release provided:

> The undersigned does hereby waive and release any and all claims, of any type . . . for labor . . . arising out of work . . . furnished by or through the undersigned in connection with the Project or the Contract through the date of 12/31/2010.

CP at 90. Contrary to Tudor's belief, the release language did not depend on whether Corstone paid amounts owed under the contract. Rather, the releases operated against claims for work performed before an identified date, December 31, 2010.

Exterra acknowledges the "releases appear to be absolute," but argues the last sentence describing the waiver and release as "partial" creates an ambiguity. Br. of Appellant at 11. Exterra avers the trial court ignored this language when it determined no ambiguity exists. Nevertheless, as already stated, use of the word "partial" was intended to reserve claims for work after an identified date. The partial waiver language reserved Exterra's right to the money under the contract notwithstanding its waiver to any lien claim arising out of work performed after December 31, 2010.

14

Viewing the waiver and releases as a whole, its subject matter, and objective, no ambiguity exists. In the unconditional waiver and release, Exterra "waive[d] and release[d] any and all claims, of any type, kind or character . . . including any mechanic's or materialman's lien . . . that [Exterra] has . . . arising out of work, labor, services, equipment, material or supplies furnished by or through [Exterra] in connection with the Project or the Contract through the date of 12/31/2010." CP at 90. The conditional waiver and release contained a space for Exterra to list any outstanding claims it retained. Exterra did not list any.

Because no ambiguity exists, the trial court properly granted summary judgment for Corstone and Gateway.

We note that Charles Tudor testified that Exterra did not complete its work on the project until, at the earliest January 4, 2011, or at the latest, spring 2011. The releases signed by Exterra waived claims for work only before December 31, 2010. If Exterra had not provided discovery responses to the contrary, we would remand the case because of a question of fact as to whether Exterra's lien should remain an encumbrance because of work performed after December 31, 2010.

Exterra responded to an interrogatory as to the basis of the amount claimed by referring Corstone to invoices. The invoices showed the last date of work to be November 16, 2010. Exterra supplied no explanation as to the contradiction between its owner's declaration and its interrogatory answer. Out of fairness to its opponents,

15

Exterra may not respond to discovery with one version of facts and then testify, in response to a summary judgment motion, with contradictory facts.

Self-serving affidavits contradicting prior depositions cannot be used to create an issue of material fact. *Davis v. Fred's Appliance, Inc.*, 171 Wn. App. 348, 357, 287 P.3d 51 (2012); *McCormick v. Lake Wash. Sch. Dist.*, 99 Wn. App. 107, 111, 992 P.2d 511 (1999). When a party has given clear answers to unambiguous deposition questions which negate the existence of any genuine issue of material fact, the party cannot thereafter create such an issue with an affidavit that merely contradicts, without explanation, previously given clear testimony. *Klontz v. Puget Sound Power & Light Co.*, 90 Wn. App. 186, 192, 951 P.2d 280 (1998).

The cited opinions concern incongruous deposition testimony, not interrogatory answers. We discern no relevant difference between the two, however. Interrogatory answers are also given under oath and may be used to impeach. CR 33(a) and (b). More reason exists to apply the incongruous testimony rule to interrogatory answers. In a deposition, the party has scant time to respond to a question. A party has at least 30 days to reflect on an interrogatory question before answering.

*Reasonable Attorney Fees*

Exterra argues Corstone was not entitled to attorney fees and costs because it was not a party to the litigation. For the reasons previously declared, Corstone was a party.

16

Corstone held a duty to Gateway to remove the lien. The lien suit arises out of Corstone's and Exterra's contract, which contained a fee shifting clause.

Exterra does not challenge the trial court's actual award of attorney fees, or the reasonableness of it. As such, Corstone's award of attorney fees, and the reasonableness of it, are verities on appeal. *See Regan v. McLachlan*, 163 Wn. App. 171, 178, 257 P.3d 1122 (2011). The trial court did not err in granting Corstone attorney fees.

Corstone raises four bases for awarding it attorney fees and costs on appeal. Because its request goes unchallenged and has merit, this court need address only the first. Corstone requests attorney fees under RAP 18.1. RAP 18.1(a) permits an award of attorney fees and costs on appeal if granted by applicable law. Corstone is entitled to reasonable attorney fees under the terms of the waiver and release documents signed by Exterra. Thus, Corstone may recover attorney fees on appeal.

## CONCLUSION

We affirm the trial court's grant of summary judgment to Corstone dismissing the lien foreclosure action and granting Corstone attorney fees and costs. We award Corstone reasonable attorney fees and costs on appeal and direct that a court commissioner determine the amount of the award.

17

No. 31751-0-III
*Exterra, LLC v. Cle Elum Gateway Property, LLC*

A majority of the panel has determined this opinion will not be printed in the

Washington Appellate Reports, but it will be filed for public record pursuant to RCW

2.06.040.

_____
Fearing, J.

WE CONCUR:

_____
Siddoway, C.J.

_____
Lawrence-Berrey, J.